MAMIE CLARK, v. IOWA STATE TRAVELING MEN'S ASSO-CIATION, Appellant.

**Mutual insurance:** ASSESSMENTS: BY-LAWS: CONSTRUCTION. A member of a purely mutual insurance association can not be assessed for losses occuring prior to his membership, unless he has agreed to pay such assessments. The by-laws in the instant case do not authorize such assessments; but if ambiguous in that respect they must be construed strictly against the association to avoid forfeiture.

**Same:** DIVERSION OF FUNDS. A mutual insurance company has no

power to create an emergency fund from dues and assessments paid by its members for another purpose, unless its charter and by-laws so provide; and such a fund not so provided for is illegally created.

Same: DIVERSION OF FUNDS: ESTOPPEL. The fact that a member of a mutual insurance association received a copy of a resolution in the form of a recommendation for the creation of an emergency fund from funds paid for other purposes, and made no protest against the proposition, would not prevent his beneficiary from contesting the validity of the fund; in the absence of evidence that he knew of the existence of the fund or that his payments had been diverted thereto.

Same. An insurance association has no right to divert the payments made by a member to another fund illegally created, or to transfer thereto money from the general fund to which he has contributed; nor can he be compelled to contribute to a fund already in excess of that authorized.

Same: ASSESSMENTS: FORFEITURE. Where a mutual association has demanded and received larger assessments than it was entitled to, the excess is held as a credit for future assessments; and where such credit exists the membership can not be forfeited.

Same: ACCIDENT INSURANCE: CAUSE OF DEATH: EVIDENCE. In this action upon an accident certificate the evidence is held to show that the member was drowned, and to authorize recovery under a provision creating liability for bodily injuries through external, violent and accidental means, which independent of other causes resulted in death.

Same: BURDEN OF PROOF. The burden in this action was upon plaintiff to show that death resulted from a cause within the terms of the certificate; and this burden was met by a showing that the member was drowned while bathing, and is not overcome by the mere fact that he voluntarily entered the water.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

TUESDAY, MAY 7, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*Guthrie, Gamble & Street,* and *Bowen & Albertson,*
for appellee.

SHERWIN, J.—The plaintiff is the widow and bene-
ficiary of Hay Clark, who died on the 6th day of September,
1908, the holder of a benefit certificate issued by the de-
fendant association on the 2d day of February, 1895.
The defense is that Clark was not a member at the time
of his death, because of the fact that he had not paid
assessment No. 75, ordered by the board of directors
on the 6th day of June, 1908, and which was payable, in
any event, before the 1st day of August, 1908. It is con-
ceded that this assessment of $2 was not paid; but appellee
contends that Clark was nevertheless a member in good
standing at the time of his death, because of the several
reasons which we shall later discuss.

The defendant is a purely mutual association under
the statute and its charter and by-laws. Its articles of
incorporation provide that its business "shall be the col-
lection of funds from its members by fixed membership
fees, dues and equal assessments upon each member, to be
used for the mutual benefit and protection of its members,
their families, heirs and beneficiaries." And further:
"The directors shall have full charge of all funds of the
association and shall have authority to make such assess-
ments as may be necessary to carry out the aims and ob-
jects of this association." Article 5, section 4, of the
by-laws, provides as follows: "The board of directors may
order an assessment of not to exceed the sum of two
dollars at any one time upon each member for the purpose
of raising funds when necessary in the course of the busi-
ness of the association and for the purpose of carrying out its
aims and objects. The amount in the treasury of the associa-
tion shall not be reduced below the sum of five thousand five
hundred dollars, unless it is to pay benefits or indemnities
prior to making and collecting the assessments therefor, and

whenever, by such payment, the funds therein are reduced below said sum, said directors shall then make an assessment as herein provided." And section 5 of article 5 provides that, "upon the death of a member in good standing, the board of directors may make an assessment on each member in good standing in the sum of two dollars ($2.00), of which assessment the secretary shall forthwith notify each member." It will be noticed that under this section an assessment for a death benefit can only be made after the death has occurred.

At the annual meeting of the association in December, 1897, the following resolution was duly adopted: "Resolved, that it is the sense of this annual meeting that the present is a very favorable time to commence the accumulation of an emergency fund of $100,000 to be made up (as fast as convenient) out of the annual dues, as they may be paid from year to year. This fund should be put out upon interest, but at all times subject to the acts of the president and board of directors, when, in their judgment, an emergency has arisen or when disturbing it will avoid the necessity of making more than four assessments in any year." And following its adoption the annual dues of the members were diverted to the emergency fund so provided for, and at the time of Clark's death there was $169,000 in said fund. The association had long followed the rule of making but four assessments of $2 each per year, and had on several occasions drawn from the emergency fund to meet its liabilities; and at one time it transferred from the general fund to the emergency fund $15,000. At the time Clark became a member, there were liabilities on benefit certificates, aggregating over $34,000, which were afterwards paid from funds to which Clark contributed by paying assessments leveied therefor. Appellee contends that Clark was not in default for failure to pay the last assessment, because he had before that time overpaid all valid demands, and was entitled to credit on the last assessment for such

overpayment. It is claimed that he had overpaid "by contributing to the payment of losses incurred before his membership, and for which he was not liable," "by contributing to a wholly illegal emergency fund," "by contributing to an excess in the emergency fund, even if it was valid to the amount contemplated by its terms," and "because moneys which he had contributed on assessments were diverted into the emergency fund without authority to use any funds received by assessments on that account, even if the emergency fund itself was valid." Appellee further says that the assessment was unnecessary, because there were available funds on hand in excess of any ascertained requirements, and that Clark was not bound to pay it. There are two or three sufficient reasons for holding that there was no loss of membership because of the nonpayment of the last assessment.

In a purely mutual association, such as this is, a member can not be assessed for, or be compelled to pay, losses that occurred prior to his membership, unless he has agreed to do so; and there is nothing in the record before us which suggests that Clark contracted to become thus liable. *Hetzel v. Golden Precept*, 129 Iowa, 655; *Newman v. Association*, 76 Iowa, 56; *Collins v. Insurance Co.*, 96 Iowa, 216.

1. MUTUAL INSURANCE: assessments: by-laws: construction.

The provision in section 4 of article 5 of the by-laws does not, in our judgment, necessarily indicate that the board may assess new members for past losses. The declared mutual purpose of the association would negative such intent; and, if there is ambiguity in the by-law in question, it must be construed strictly against the association, to prevent a forfeiture.

We shall not determine whether an emergency fund may be legally provided by a mutual association of this kind. For, however that may be, it is very clear that the defendant's action, in attempting to provide for such fund

was illegal. The constitution and by-laws provided what

**2. SAME:**
**diversion**
**of funds.**

funds should be raised, and how the dues and assessments should be used; and if, under the statute, the association had the power to provide an emergency fund, it could only be done by amendment to the charter or by-laws, adopted in the manner pointed out therein. An amendment to the constitution requires "two-thirds vote of the members in good standing present" after the proposal has been on file with the secretary "ninety days prior to the meeting." The requirement for amending the by-laws is as follows: "These by-laws may be revised or amended at any regular meeting of the association by two-thirds vote of the members present: Provided, that any proposed revision or amendment thereto be filed in writing with the board of directors not less than thrity days prior to said meeting, such proposed amendment to be mailed immediately thereafter to each member in good standing." There was no pretense of complying with either of these provisions of the constitution and by-laws; and nothing further than the adoption of the resolution was ever done to authorize the creation of the emergency fund.

Appellant, says, however, that Clark acquiesced in the action of the association relative to the fund, because he had notice of the adoption of the resolution and made

**3. SAME:**
**diversion**
**of funds:**
**estoppel.**

no protest. But this is begging the question on the record in this case. Clark may have received a copy of the resolution and notice of its adoption, as claimed by appellant; but there is absolutely no evidence tending to show that he had knowledge of the existence of the fund, or that the annual dues paid by him had been diverted thereto. He was charged with notice of the provisions of the charter and by-laws, and knew that such fund could not be legally created without amendment thereto. The resolution was in the form of a recommendation merely; and Clark had the right to assume

that no further action relative thereto would be taken without proper amendment to the by-laws. True he paid his dues and assessments thereafter; but he is not shown to have had knowledge that any of the money so paid was being placed in this fund. On the contrary, he had the right to believe that his payments were being applied in strict accordance with the laws of the state and the association. There can be no acquiescence without full knowledge; nor will the doctrine be applied in aid of a forfeiture where an illegal exaction has been made.

The emergency fund having been illegally created, the association·had no right to divert any of Clark's payment's thereto, either in the annual dues paid by him, or by transferring to such fund the $15,000 from the general fund to which Clark had contributed. Furthermore, had the emergency fund of $100,000 been legally created, the defendant would have had no right to use Clark's money to help swell the fund to $169,000. His money could only be legally used for the purposes designated by the laws of the association. He was not bound to contribute to a fund in excess of that authorized; and the use of his money for such purpose would have been illegal in any event.

4. SAME.

Where an association of this kind has exacted and received from a member more money than it was entitled to, it is held as a credit to be applied on future assessments; and, where such credit exists, the membership can not be forfeited for a failure to pay an assessment. *Younghoe v. Association*, 126 Iowa, 374; *Hetzel v. Knights, etc., supra*; *Trotter v. Grand Lodge*, 132 Iowa, 513; *Rambousek v. Toilers*, 133 Iowa, 375; *Wait v. Workers*, 140 Iowa, 648. For the reasons above stated, there could be no forfeiture of Clark's membership, and we need not discuss other points relied upon by the appellee. We hold

5. SAME: assessments: forfeiture.

that he was a member in good standing at the time of his
death.

The appellant's by-laws provide that, "whenever a
member, in good standing, through external, violent and
accidental means, receives bodily injuries which shall, inde-

6. SAME:
accident insur-
ance: cause
of death:
evidence.

pendently of all other causes, result in
death," it shall be liable, and that no
liability shall exist where death results,
· wholly or partially, directly or indirectly,
from disease, bodily or mental infirmity, or from intoxica-
tion. The facts surrounding the﹘death of Clark were as
follows: On the Sunday of his death, Mr. Clark was in
Kansas City, Mo., with his son, who was then about fifteen
years of age. They had breakfast after nine o'clock in
the morning, and dinner at a little after one o'clock. Soon
after dinner, the two went to the Elks' lodgeroom, and a
few minutes after reaching there they both went to the
pool for a bath. Clark had been in the water a few
minutes, and was walking towards his son, when he made
a slight jump forward, made a few faint motions with his
hands, and sank. He was taken from the pool five or
ten minutes later, dead. An autopsy showed him to have
been in perfect health in life, and the opinion of several
medical experts was that the cold water had produced a
shock from which Clark's system did not react; that his
vitality was thereby reduced and a fainting spell brought
on, which caused him to sink; and that he was drowned.
While the appellant earnestly insists that the evidence is
sufficient to sustain a finding that Clark was drowned, we
think otherwise. The testimony of the physicians, based
largely on the autopsy, it is true, together with the tes-
timony of the eyewitnesses, was ample to take the case
to the jury on that question. *Hopkinson v. Knapp &
Spaulding Co.,* 92 ·Iowa, 328; *Railway Co. v. Wood,* 66
Kan. 613 (72 Pac. 215); *Bradbury v. City,* 80 Conn.

298 (68 Atl. 321); *Dunlap v. Rock Island,* 145 Mo. App. 215 (129 S. W. 262).

The burden rested on the plaintiff to prove that Clark's death was the result of accidental means, and appellant contends that this burden has not been met; and, further, 7. SAME: burden that the cause of death established was not of proof. within the terms of the policy, because it was not shown to be independently of all other causes, and because it was a death resulting, wholly or partially, directly or indirectly, from "disease, bodily or mental infirmity." These contentions may be discussed together. We do not understand that the appellant is claiming that drowning may not, under certain circumstances, be accidental; and as we have already said, the evidence is sufficient to sustain the finding that he was, in fact, drowned. If we get the right idea of appellant's claim at this point, it is that Clark's voluntary act in entering the water was one of the causes of his death, or a contributing cause thereof. The position is unsound. Followed to its final result, it would mean that no man can recover on an accident policy containing a similar provision, if he received an injury while voluntarily engaged in any physical movement. Such a construction of the appellant's law would cause alarm among its 31,000 members, and surprise even the makers of the law, if the provision was ever intended to furnish indemnity for the money paid to the association. *Mutual Co. v. Barry,* 131 U. S. 100 (9 Sup. Ct. 755, 33 L. Ed. 60); *Insurance Co. v. Schmitz,* 66 Ark. 588 (53 S. W. 49, 74 Am. St. Rep. 112); *Southard v. Insurance Co.,* 34 Conn. 574 (Fed. Cas. No. 13,182); *Association v. Alexander,* 104 Ga. 709 (30 S. E. 939, 42 L. R. A. 188); *Insurance Co. v. Hubbell,* 56 Ohio St. 516 (47 N. E. 544, 40 L. R. A. 453). *Carnes v. Association,* 106 Iowa, 281 (76 N. W. 683, 68 Am. St. Rep. 306), furnishes no support for appellant's contention. There the deceased voluntarily took a rank poison. The facts

distinguish this case from the *Feder* case, 107 Iowa, 538. The clause in question undoubtedly means that an accident must be the immediate and final producing cause of death. Analogous to this is the provision relative to "disease, bodily and mental infirmity." This can only apply where the disease is a co-operating ultimate cause of the injury. In this case, there is no evidence of disease or infirmity, other than the shock produced by the water and the fainting spell, and it falls squarely within the rule announced in *Meyer v. Fidelity & Casualty Company*, 96 Iowa, 378, and is not within the rule in *Binder v. Association*, 127 Iowa, 25, and other like cases.

Complaint is made of two instructions given and of the refusal to submit some of the appellant's requests. We think there is no just cause for complaint. The sixth instruction was in line with the *Meyer* case; and the instruction relative to intoxication was not prejudicial to the appellant. So far as the requests were pertinent, they were embodied in the instructions given. The judgment should be, and it is, *Affirmed*.