### ROBINSON v. ÆTNA LIFE INS. CO.
### (No. 546—4239.)

(Commission of Appeals of Texas, Section B. Nov. 4, 1925.)

**1. Trial ⬥260(8)—Refusal of requested definition of accidental means held not erroneous.**

On issue whether insured slipped and fell, or fell because of illness, giving an ordinary definition of "accident," and refusal to instruct that "accidental means" meant that element of accident must consist in that which produced the accident, rather than mere fact of injury, *held* not erroneous, especially where requested definition appeared to be argumentative and on weight of evidence.

**2. Insurance ⬥668(11)—Refusal to submit defensive issue that insured's death was due to apoplexy held erroneous.**

In action on policy for accidental death, where evidence raised issue that insured's death might be due to apoplexy, court's refusal to submit such issue *held* error.

**3. Trial ⬥255(2)—Defendant entitled on proper request to have affirmative submission of all ultimate defensive issues raised by pleadings and evidence.**

Defendant, on a trial of special issues as well as under a general charge, is entitled upon proper request to have an affirmative submission of all ultimate defensive issues raised by pleadings and evidence, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 1984a, and 1985.

**4. Trial ⬥219—Court should define apoplexy on issue whether insured slipped and fell, or fell because of "apoplexy."**

On issue whether insured slipped and fell, or fell because of apoplexy, court should give such definition of apoplexy as to make it certain that by apoplexy is meant a break or rup-

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ture of a blood vessel in the brain, not produced by any external cause.

**5. Insurance ☜455—Death of insured solely from apoplexy not caused by "external, violent or accidental means," within accident policy.**

If insured died solely from a rupture or break of a blood vessel in the brain, his death did not result from any external, violent, or accidental means, within accident policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, External, Violent and Accidental Means.]

**6. Evidence ☜547—Court's refusal to permit attorney to testify as to concession against suggested attorney's fee held erroneous.**

Refusal to permit an attorney, testifying as to reasonable attorney's fee to be allowed plaintiff, to state that he would make a concession against his suggested fee, in view of fact that same attorney was to represent plaintiff in a similar pending case, was error.

**7. Insurance ☜455—Fainting spell or other temporary bodily infirmity may be "accidental means," within meaning of accidental insurance.**

Fainting spell or other temporary bodily infirmity may be "accidental means" of an injury, within meaning of accident insurance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental Means.]

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Mrs. Mary Ellen Robinson against the Ætna Life Insurance Company. Judgment for plaintiff was reversed in 262 S. W. 118, and plaintiff brings error. Modified and affirmed.

Lewis, Campbell & Nicholson, of Houston (T. H. Cody and Gavin & Ulmer, both of Houston, of counsel), for plaintiff in error.

Baker, Botts, Parker & Garwood, of Houston (Y. D. Mathes and E. F. Smith, both of Houston, of counsel), for defendant in error.

SPEER, J. Mary Ellen Robinson sued the Ætna Life Insurance Company upon an accident policy insuring the life of her husband, Charles W. Robinson, and recovered in the trial court judgment for $7,500, the amount of the policy contract, $337.50, interest, $900 statutory penalty, and $2,500 attorneys' fees. Upon appeal to the Court of Civil Appeals by the defendant, that court reversed the judgment of the trial court, and remanded the cause (262 S. W. 118), and the points thus decided are before us upon the writ of error.

The policy under consideration contained the usual clause insuring against loss as therein defined, "resulting directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means." The court's charge, as originally drawn and submitted, contained no definition of the words "accident" and "accidental" in the connection in which they were used in the policy and the charge, but after the counsel for the plaintiff had made his opening argument and one of the counsel for the defendant had spoken, the court did prepare and submit the following:

"You are further charged in this case that the terms 'accident' and 'accidental,' as used in the charge and special issues submitted to you by the court, are employed in their ordinary and popular sense, as meaning happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected; an event which takes place without the foresight or expectation of the person acted upon."

The defendant company requested the court to give the following definition:

"The term, 'effected solely through external, violent and accidental means,' means that the element of accident must consist in that which produces the injury rather than in the mere fact that an injury occurs."

[1] This was refused. In fact, the request was refused before the court gave the instruction defining the terms "accident" and "accidental" already referred to. The Court of Civil Appeals held that this requested charge, containing the definition of the term "accidental means," should have been given, and cites as authority therefor Bryant v. Continental Casualty Co., 107 Tex 582, 182 S. W. 673, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517, from the opinion in which the language of the requested instruction appears to have been taken. It appears also that the definition actually given by the court was taken from Mutual Accident Association v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, which Chief Justice Phillips in the Bryant Case declares to be "the best definition of the term in the books." While it is true the requested instruction included in the definition the word "means," and the definition as given expressly defined only the words "accident" and "accidental," still the necessity for a definition lay in the use of the words "accident" and "accidental" rather than "means," and a definition of those words necessarily would be associated in the minds of the jury with their use in connection with the word "means." In truth, since the word "accidental" occurs in special issue No. 1 in connection with the word "means," and since the word "accidentally" occurs in special issue No. 2 without such association, the court's determination to define those words separately was not an improper one, and, his definition being accurate, the defendant received all it was entitled to in the matter of defining the term "accidental means." Furthermore, it is not altogether clear under

the facts of this case the requested definition was not improper as being argumentative and on the weight of the evidence. While it is true that the mere unexplained death of the deceased could not be considered as evidence of death through accidental means, still, in the light of the circumstances surrounding his death, the visible signs of external injury not otherwise explained, the jury might find from the nature of the injury under all the circumstances that it occurred solely through accidental means. However this may be, we are content to rest our ruling upon the sufficiency of the definition given by the court, and in reversing upon this point the Court of Civil Appeals erred.

The Court of Civil Appeals further ordered a reversal because of the refusal to submit the defendant's requested issue upon apoplexy, to wit, "Did apoplexy cause or contribute directly to the death of Charles W. Robinson?"

[2, 3] We think this holding was correct. Under the issues made by the pleadings the burden was upon the plaintiff to show that the death of Charles W. Robinson resulted directly and independently of all other causes from bodily injuries effected solely through external, violent, and accidental means. If apoplexy caused or contributed directly to cause the death, the plaintiff could not recover, and a finding to that effect was therefore most material to the defense. As said by the Court of Civil Appeals, it is now too well established to require a review of authorities that a defendant on a trial on special issues as well as under a general charge is entitled upon proper request to have an affirmative submission of all the ultimate defensive issues raised by the pleadings and evidence. The requirement is statutory (Vernon's Sayles' Texas Civil Statutes 1914, arts. 1971, 1984a, 1985), and is clearly stated by Mr. Justice Greenwood in Fox. v. Hotel Co., 111 Tex. 461, 240 S. W. 517, a special issue case where it is said:

"Each group of facts pleaded by defendant in error, which, standing alone, would, if proven, constitute a complete defense to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she pleaded and proved."

The issue that deceased died from apoplexy was raised by the testimony of physicians, who testified as experts that in their opinion the deceased's death was probably caused by apoplexy.

[4. 5] While we hold it was error to refuse to submit this issue, still, we think, upon another trial, the court should give such definition of apoplexy as to make it certain that by apoplexy is meant a break or rupture of a blood vessel in the brain, not produced by any external cause. The necessity for such an explanation is made apparent from some of the testimony of the physicians in the record. By one of them apoplexy is defined to be "a hemorrhage or bleeding into the brain tissues; blood escaping from a blood vessel into the brain from a vessel that carries it into the brain and leaking out into the brain tissues." Such a condition might be produced wholly by external, violent, and accidental means within the terms of this policy. See International, etc., Association v. Branum (Tex. Civ. App.) 169 S. W. 389, reversed on other grounds, Id., 109 Tex. 543, 212 S. W. 630. But, if the deceased died from apoplexy as that term is commonly understood—that is, from a rupture or break of a blood vessel into the brain not caused in any respect by any external, violent or accidental means— then clearly such death is not covered by the policy under consideration. This issue should have been submitted.

[6] The Court of Civil Appeals likewise reversed the judgment because the trial court refused to permit the defendant to prove on cross-examination, by the witness, Judge Howard, who had testified that $2,500 was a reasonable attorney's fee in the case, that due to the fact that another case was pending involving the same issues of law and fact as involved in this case, and the plaintiff was represented in both cases by the same attorney, and that he could use the result of his investigation in the one case in the trial of the other, he would make a concession of $500 as against his suggested fee of $2,500, thus making $2,000 a reasonable fee in the present case. We agree with the conclusions of the Court of Civil Appeals upon this point. It is, of course, true the plaintiff in error is entitled to recover the reasonable value of an attorney's service in this case, but it is also true that the value for that service is determined in a large measure by the nature and extent of such service, and it is easily understood that the service in this case might be less onerous on counsel by reason of his representing plaintiff in error in the companion case, and his labors on behalf of his client therefore correspondingly less in each case.

Plaintiff in error, by her second assignment of error, complains of the language of the Court of Civil Appeals wherein it said:

"But if because of a fainting spell, or some other bodily infirmity, he was caused to fall, thereby inflicting the injury, though the injury may have been the sole cause of his death, it would not necessarily follow that the death was occasioned by accidental means."

[7] The reversal, however, was not predicated in any manner upon this statement, but the language is used merely in illustrating what is meant by "accidental means." However, it is true that a "fainting spell" or other temporary "bodily infirmity" may be the

"accidental means" of an injury within the meaning of accident insurance. See Manufacturing, etc., Co. v. Dorgan, 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620; Meyer v. Fidelity & Casualty Co., 96 Iowa, 378, 65 N. W. 328, 59 Am. St. ˙Rep. 374; Preferred, etc., Co. v. Muir, 126 F. 926, 61 C. C. A. 456. The case of Bryant v. Continental Casualty Co., supra, is a case of sunstroke, and International, etc., Co. v. Branum, supra, one òf apoplexy, each, of course, being one of "bodily infirmity" in a sense.

The Court of Civil Appeals properly remanded the case for another trial, and we recommend that its judgment be affirmed and the cause remanded for another trial consistent with this opinion and the opinion of the Court of Civil Appeals as here modified.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.