## Provident Life & Accident Ins. Co. v. Watkins.

(Decided Dec. 4, 1934.)

MARTIN & SMITH and FITZPATRICK, BROWN & DAVIS for appellant.

CALDWELL & GRAY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In February, 1932, the appellant, the Provident Life & Accident Insurance Company, insured the life of Robert C. Watkins, naming therein as beneficiary his wife, Lola Watkins, appellee herein. The pertinent insuring clauses of the policy insure against ''the effects resulting directly and exclusively of all other causes, from bodily injuries sustained during the life of this policy, solely through external, violent and accidental means,'' and further providing that, ''if the death of the insured shall result solely from such injury and within 120 days from the date of the accident the Company will pay for the loss of life said principal sum ($2,000.00), and in addition all premiums previously paid on this policy.''

The policy also contains the provision that:

''This policy does not cover injuries, fatal or non-fatal, sustained by the insured which shall result wholly or partly from disease, sickness or medical or surgical treatment therefor.''

Watkins, the insured, was a railroad engineer engaged in operating a passenger train for the C. & O. Railway Company, and while thus engaged on May 1, 1932, while his train was standing at the station at Shelby, Ky., the insured fell and received certain injuries, which, it is claimed, ultimately resulted in his death within the time limit provided by the terms of the policy. The company denied liability under the terms of the policy and appellee brought this suit in the Boyd circuit court against appellant to recover under the policy.

The petition alleges that Watkins sustained personal bodily injuries which were effected directly and independently of all other causes solely through external,

violent, and accidental means, and which resulted in the death of the insured. The answer does not deny the alleged injuries received by the insured, but denied that the injuries were effected directly or independently of all other causes "solely through external, violent or accidental means," etc. The answer affirmatively pleaded that provision of the policy relating to the death resulting wholly or partly from disease, sickness, or medical or surgical treatment therefor, and alleged that Watkins' death resulted wholly or partly from disease, sickness or medical or surgical treatment therefor; and that the original or primary cause of his injuries was disease, bodily infirmity, and sickness, and not covered by the terms and provisions of the policy. These allegations were traversed by plaintiff's reply, and the case proceeded to trial upon the issues thus joined, and resulted in verdict and judgment for appellee for the sum sued for, and the insurance company has brought this appeal.

The pleadings, evidence, and briefs for respective counsel present on this appeal the sole issue whether or not Watkins' death resulted "from bodily injuries sustained solely through external, violent and accidental means," according to the terms of the policy.

Thomas Roberts, Watkins' fireman, was the only eyewitness to the accident. He testified that the train had made its regular stop at Shelby, Ky., where passengers and baggage were being loaded and unloaded. Upon the completion of handling the baggage at that station, the baggageman, pursuant to the rule of the company, pulled the bell cord in a manner as to indicate to the engineer that everything was in readiness for him to call for his flagman and move his engine. Watkins was sitting upon the seat in the engine cab provided for the engineer's use. The fireman, Roberts, was sitting upon the fireman's seat on the opposite side of the cab. Immediately upon receiving notice to call the flagman, Watkins arose to his feet apparently to grasp and pull the whistle cord; he failed to grasp or pull the cord, and sank back upon his seat as in the act of sitting, and from the seat he slid to the floor of the cab, striking the back of his head upon a lump of coal or other hard substance. To be accurate, we quote from the testimony of the fireman:

"Q. What did Mr. Watkins do when the signal came on the cord, if anything? A. He reached

up to get the rope, we called it, and he did not pull it and he slid down and I thought he was going to take his seat and he slid off his seat and hit the deck.

"Q. Fell backwards? A. Yes, sir, he fell back on the deck of the engine. * * *

"Q. Did you try to catch him before he struck the floor? A. I did not realize what was going to happen.

"Q. Was his action there in falling, Mr. Roberts, the action of a sick or stricken man? A. No, sir.

"Q. Did he seem to lose control of himself? A. No, sir. * * *

"Q. He was accustomed to doing that, wasn't he? A. Well, I don't know, but he did that that particular morning.

"Q. You could see he was falling could you, before he hit the deck? A. No sir, I thought he was going to sit down on his seat.

"Q. Did he fall off the seat? A. Slid off the side of it."

Immediately after Watkins was injured, he was taken to the Pikeville Hospital and there examined and treated by Dr. Gronnerud. The baggageman, Brewer, who helped to carry Watkins from the cab to the baggage car, testified that the back of his head was bleeding and that he remained with Watkins until he reached Pikeville and he was unconscious during that time. However, as the train was coming into Pikeville, Watkins spoke to Brewer, saying, "I am sick." Dr. Groonerud testified that Watkins had a scalp wound at the base of the brain with a concussion, and that he developed mental aberration or psychosis. Mrs. Watkins, appellee, testified that she saw Watkins at the hospital the day after his injury and described it thus:

"Q. Tell the jury whether you examined any part of his body, and if so, what you found? A. Yes, sir. I examined his head. It was bruised and had a broken place about the size of a quarter and there was another large place around that that was bruised."

Mrs. Henderson, a daughter of Watkins, testified that she saw him the day after the fall and observed the

bruises, and that the dark bruise was about the size of a quarter "and the other I guess about the size of a teacup."

He was removed to the C. & O. Hospital at Huntington, where he was kept for a while and treated by Dr. Vest, a C. & O. surgeon. Thereafter Watkins was sent to Lexington, Ky., to the Eastern Kentucky State Hospital, where, because of his insane condition, he refused to eat, and died from starvation on August 3, 1932.

Three doctors who attended Watkins while in the State Hospital at Lexington from July 20 until his death testified that in their opinion his death was a result of the fall. On the other hand, Dr. Vest of Huntington and Dr. Hodges, a pathologist, who performed the autopsy in the presence of Dr. Vest and other doctors, both testified that they were of the opinion that the fall did not cause Watkins' insanity, which later resulted in his death as above stated. Thus it will be seen that the evidence respecting the cause of Watkins' insanity was conflicting, and therefore presented a question for the jury.

It is the contention of appellant that there is no evidence conducing to show that Watkins' fall was an accident within the meaning of the policy, and that appellee is not entitled to recover unless it was shown that the fall was caused "solely by external, violent and accidental means," and that the cause of the fall is the basis of recovery but not the result of the fall. Appellant cites the case of Salinger v. Fidelity & Cas. Co. of New York, 178 Ky. 369, 198 S. W. 1163, 1164, L. R. A. 1918C, 101, as authority to support its contention. In that case Salinger exerted himself in placing boxes upon a high shelf to such an extent as to cause a blood clot against the retina of his eye, which caused blindness. It was held that the blindness was not caused by accident within the meaning of the policy insuring against "bodinly injury sustained through accidental means resulting directly, independently and exclusive of all other causes," etc. The court said:

"It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though un-

expected, result of an ordinary act in which the insured intentionally engages."

If Salinger had fallen while thus engaged in his work and thereby produced the injury complained of, the case then would be brought within the facts of the case at bar. Watkins' injury was not produced by rising from his seat and reaching for the cord or other act connected with his work, but by the fall; while in the Salinger Case, supra, the injury was produced by the lifting of the boxes and in the direct performance of his work, and consequently there was no external or accidental means.

Furthermore, it is the well-settled rule that a fall or other act resulting in an injury, though superinduced by disease or bodily infirmities, is nevertheless an accident if the injury is the direct result of the fall or other act, and not a direct result of the disease. A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1, 3. In the case supra, after Barnhill had completed his day's work and started to his car which was parked on the premises, he turned "blind or dizzy" and fell and broke his leg. For this injury he made application to the Workmen's Compensation Board for adjusted compensation under the workmen's compensation statutes (Ky. Stats. sec. 4880 et seq.), authorizing adjusted compensation for personal injury sustained by an employee by an accident arising out of and in the course of his employment; provided, however, that personal injury by accident shall not include disease except where disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease. It was held that Barnhill's injury was the direct result of the fall and not of a pre-existing disease. The court said:

"The statute does not exclude the 'results' of an accident. It merely excludes the 'results' of a pre-existing disease. The 'results,' as the term is used in the statute, are the ordinary and natural consequences of the disease itself, and not the accident resulting from such disease."

The case, supra, involved the construction of the workmen's compensation statute, but the same process or method of reasoning employed in the construction of the statute, supra, is applicable to the construction of the insurance policy in question.

In Fidelity & Cas. Co. v. Cooper, 137 Ky. 544, 126 S. W. 111, 113, in construing an accident policy similar to the one under consideration, the court said:

"It [insurance company] is not liable where the injury or death happened in consequence of the disease or bodily infirmity, and not of the accident, or where it is due both to the accident and the disease. But where the accident, and not the diseased condition, 'is the proximate cause of the death, the company is liable."

In U. S. Fidelity & Guaranty Co. v. Blum (C. C. A.) 270 F. 946, 957, the court cites with approval the statement of the rule from prior cases, thus:

" 'A sick man,' says the court in Bohaker v. Travelers' Insurance Co., 215 Mass. 32, 34, 102 N. E. 342, 344, 46 L. R. A. [N. S.] 543, 'may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease.' * * *

"The language of Judge Taft in Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 954, 7 C. C. A. 581, 590, 22 L. R. A. 620, is illustrative and highly instructive. He says: 'If the diseased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause.' "

See, also, 29 Cyc. 946; Meyer v. Fidelity & Cas. Co. of New York, 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374; National Life & Accident Ins. Co. v. Cox, 174 Ky. 683, 192 S. W. 636.

In Clark v. Iowa State Traveling Men's Ass'n, 156 Iowa, 201, 135 N. W. 1114, 1117, 42 L. R. A. (N. S.) 631, Clark, the insured, went to a pool for a bath; while in the pool he made a slight jump forward, made a few faint motions with his hands, and sank. He was taken

from the pool a few minutes later, dead. A recovery under an accident policy similar to the one in the instant case was sustained by the Supreme Court of Iowa. The court said:

"The clause in question undoubtedly means that an accident must be the immediate and final producing cause of death. Analogous to this is the provision relative to 'disease, bodily and mental infirmity.' This can only apply where the disease is a co-operating ultimate cause of the injury. In this case, there is no evidence of disease or infirmity, other than the shock produced by the water and the fainting spell, and it falls squarely within the rule announced in Meyer v. Fidelity & Cas. Co., 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374, and is not within the rule in Binder v. National Masonic Acc. Ass'n, 127 Iowa, 25, 102 N. W. 190, and other like cases."

In the case at bar there was no evidence conducing to show that Watkins was ill or had any disease or bodily infirmity, and, as stated above, conceding that his fall was due to a stroke, faint, or other disease or infirmity, this case comes within the rule of the Clark Case, supra, and other similar cases.

It is next insisted that instruction A given by the court was erroneous. The instruction reads:

"If you believe from the evidence that the deceased Robert C. Watkins, on or about May 1, 1932, fell and struck the back of his head upon the floor, or deck, of his engine or tender and thereby sustained bodily injuries which, directly and exclusively of all other causes, caused him to become insane and that by reason of such insanity, the said Watkins refused to eat or take nourishment and thereby, directly and exclusively of all other causes, produced his death you will find for the plaintiff; but if you believe that the insanity of deceased was caused wholly by disease or sickness, or partly by disease or sickness and partly by the fall, you will find for the defendant."

The alleged error in this instruction is that it did not require the jury to believe that the fall of Watkins was accidental. In view of our conclusion above indicated—that it is immaterial what caused the fall—it was

unnecessary to submit that question to the jury. The cause of Watkins' insanity resulting in his death is the real issue, and this issue was aptly submitted by the instructions given.

Lastly, it is insisted that appellant should have been granted a new trial upon the ground of newly discovered evidence. The alleged newly discovered evidence was that after the trial of the case appellant's counsel learned from a sister of Watkins that he had been for several years prior to his death a habitual drinker and had been treated for delirium tremens. It was shown by counter affidavits that counsel for appellant learned of this rumor several days before the trial, and, if this is true, and it is not denied, counsel for appellant had the opportunity to investigate this rumor. Furthermore, it is shown by counter affidavits of the doctors who performed the autopsy that Watkins' brain and tissue showed no indication of alcoholic effects. It is the well-settled rule that the courts will not grant a new trial upon the ground of newly discovered evidence unless it is clearly shown that, had such evidence been produced to the jury at the trial, it very probably would have had a controlling effect on the verdict of the jury and would have changed the results. In view of the evidence respecting the cause of Watkins' insanity, we think it very improbable that evidence relating to Watkins' drink habits would have changed the verdict of the jury. Furthermore, the rule is that the granting of a new trial is largely within the discretion of the trial court, and his ruling will not be disturbed by this court, unless it is reasonably clear that he exercised an abuse of discretion. Under the facts disclosed by this record on the questoin of a new trial, we are unable to say that the trial court's ruling was improper.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.

The whole court sitting.