## Chesapeake & Ohio Railway Company v. Stone's Administrator

(Decided October 16, 1923.)

### Appeal from Lewis Circuit Court.

1. Railroads—Negligence of Traveler Relying on Signals for Jury.— Where signals by trains are required at crossings, a traveler may anticipate them from an approaching train, and it is a question for the jury whether it is negligence in him to rely on his hearing, without stopping and looking.

2. Appeal and Error—Damage Verdict Not Disturbed, Unless Flagrantly Excessive.—The amount of a verdict for damages for personal injuries was a question of fact for the jury, and the verdict will not be disturbed by the reviewing court, unless its amount is such as to strike one at first blush as being flagrantly excessive.

3. Appeal and Error—Granting New Trial for Excessive Verdict Not Disturbed.—Action of the trial court in granting a new trial, on the ground that a verdict for $10,000.00 for the death of a woman 59 years of age, the virtual head of a family, whose services were of the value of $1,000.00 annualy, was excessive, will not be disturbed on appeal, though such verdict would be sustained, if approved by the trial court.

4. Appeal and Error—Misconduct, Not Urged as Ground for New Trial, Not Ground for Reversal.—Where it does not appear on appeal of what misconduct of counsel consisted, and it was not made a ground in the motion for a new trial, it cannot be urged as a ground for reversal.

5. New Trial—Court May Grant on Own Motion.—A court may on its own motion set aside a verdict and grant a new trial for misconduct of counsel, if in its opinion the jury were biased thereby.

6. Appeal and Error—Finding of Misconduct Considered on Cross-Appeal, Though its Nature Not Shown.—On appeal from a judgment in a second trial, where plaintiff filed a cross-appeal by reason of the setting aside of a verdict on a first trial for a larger amount of damages, a finding of misconduct of counsel for plaintiff will be considered with the other findings of the court on granting the new trial, though it does not appear of what this misconduct consisted; the burden being on plaintiff to tender proper bill of exceptions.

7. Railroads—Statutory Signals at Crossing Mandatory, and Other Signals Important Only as Regarding Contributory Negligence.—Statutory signals at public crossings are mandatory, and the minimum of duty to be exercised by enginemen outside of cities and towns, and notwithstanding the railroad had at the crossing in question an electric bell, though, if a traveler is warned by other signals, such notice, if disregarded, will convict him of contributory negligence.

8. Railroads—Instruction Requiring Bell to be Rung or Whistle Blown Continuously Not Technically Correct.—Under statute providing that, when a train is approaching a crossing, the bell must be rung or the whistle sounded continuously or alternately, it was technically incorrect to charge that it was the duty of the enginemen to ring the bell or blow the whistle continuously.

9. Appeal and Error—Defect in Instruction as to Signals at Crossing Not Prejudicial.—An instruction making it the duty of enginemen to ring the bell or blow the whistle continuously when approaching a crossing, whereas the statutory provision was that the bell be rung or whistle sounded continuously or alternately, though technically incorrect, was not sufficiently prejudicial to authorize a new trial.

WORTHINGTON, BROWNING & REED for appellant.

A. D. COLE, R. D. WILSON and S. J. PUGH for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The Stone family lived in the town of Trinity on the south bank of the Ohio river. It consisted of the deceased, Mrs. Sarah A. Stone, aged 59, her husband, aged 70, and a grown son and daughter. The town of Manchester, Ohio, is just across the river from Trinity, and a ferry crosses the river between the two points.

The Chesapeake & Ohio Railway Company has a double line of tracks running practically east and west through the town. The public road, after leaving the water's edge at the ferry, runs diagonally up the side of the hill in a southwestern direction, and at an acute angle with the railway tracks, until it reaches within a few

feet of the intersection, and then turns to the left and crosses the tracks at right angles, the approach up the hill being at a considerable grade, so that in ascending the hill it is below the railway tracks until the point is reached at which it turns across the tracks.

On the morning of April 12, 1920, Mrs. Stone and her husband had delivered some produce in Manchester, and were returning home. After crossing the river they walked up the road, carrying a basket between them, proceeding to within a few feet of the railway tracks. At the time a long, east-bound freight train was passing on the opposite track and making considerable noise. They remained standing for a short time as it was passing, and about the time it cleared the crossing, without looking to either side, but apparently with their attention directed to the passing train, they started over the crossing, and as they reached the center of the near track were struck by a rapidly moving west-bound freight train, and Mrs. Stone hurled from the track and killed.

There is a conflict in the evidence as to whether any of the statutory signals were given by the train that struck them. The engineer and fireman stated that the whistle was sounded for the crossing at a distance of about 800 feet, and other witnesses testify as to hearing it.

While on the other hand, a number of witnesses, some of whom saw it approach and were listening for the signals, did not hear any. It is further shown that there was an electric signal bell just to the south of the crossing, but there was a strong wind blowing toward the east, and the sound was either carried in that direction or it was not of sufficient volume to attract the attention of the witnesses present, and less than one-half of them were aware that it had sounded.

In a trial in the circuit court the deceased's administrator was awarded a verdict of $10,000.00. The lower court sustained a motion for a new trial and set this verdict aside for reasons given at the time. Exceptions were reserved by plaintiff, and a bill of exceptions filed. At a subsequent trial a verdict and judgment were rendered for $3,500.00. The defendant has appealed from this judgment, insisting that the court should have peremptorily instructed the jury to find for the defendant, while the plaintiff has prosecuted a cross appeal, alleging error of the court in setting aside the first verdict, and asking

that its action in so doing be reversed, and that verdict be entered and enforced according to its terms.

As stated the only ground relied upon in the original appeal for reversal is that the court erred in overruling a motion for a peremptory instruction in its favor; this is based on the theory that as the uncontradicted evidence shows that the train could have been seen for several hundred feet before it reached the crossing and that it was within less than fifty feet of the deceased when she started across the tracks, the exercise of her senses would have indicated the nearness of its approach; that she could not have looked down the tracks without discovering it, and that she was guilty of contributory negligence, *per se,* in heedlessly going upon the tracks under such circumstances.

In reference to injuries and collisions at private crossings and other places where signal duty was not required this court has held in a number of cases that it was the duty of the traveler in the exercise of ordinary care to look for an approaching train before going upon the tracks, and that a failure to do so would constitute negligence *per se.* This is because he is not entitled to signals, and is not permitted to rely alone upon his sense of hearing. Stull's Admrx. v. Ky. Traction Co., 172 Ky. 650; C. & O. v. Hunter's Admr., 170 Ky. 4; Helton's Admr. v. C. & O. R. R. Co., 157 Ky. 380; L. & N. R. R. Co. v. Benke's Admrx., 164 Ky. 798; Hines, Director Gen. v. Wilson, 191 Ky. 543.

The same principle has been applied to a deaf person at a public crossing. His infirmity renders the signals unavailing and it is his duty to fully exercise the sense of sight. Smith's Admr. v. C. N. O. & T. P. Ry. Co., 146 Ky. 568.

But, on the other hand, where they are required it is the established rule that ordinarily a traveler may anticipate such signals from an approaching train, and it is a question for the jury as to whether it is negligence in him to rely upon his hearing without stopping and looking. L. & N. v. McNary's Admr., 128 Ky. 408; C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 79. We conclude that the court did not err in overruling a motion for a peremptory instruction.

The court gave four reasons for sustaining the motion for a new trial: (a) Verdict was contrary to the weight of the testimony; (b) excessive verdict; (c) improper argu-

ment of counsel for plaintiff; (d) error of the court in its instructions.

As to the excessive verdict, it is shown that Mrs. Stone was the virtual head of the family; that she owned a small house and about twenty acres of land, milked five cows and kept about 100 chickens. Her sales for milk and butter, aside from that used by the family, ran about $50.00 per month, and this about equaled the feed consumed by the cows, the feed being raised by the father and son. It does not appear how much was realized from the sale of the other produce; however, she looked after her household duties, and there is evidence to the effect that her services were of the value of from $800.00 to $1,000.00 annually, and that she had an expectation of life of about fifteen years.

While the verdict is large, its amount was a question of fact for the jury to determine, and as an original proposition it would not be disturbed by this court unless its amount was such as to strike one at first blush as being flagrantly excessive, and if it had the approval of the lower court we would hesitate to set the verdict aside, but on this appeal it is condemned by the lower court, who saw and heard the witnesses, possibly knew them, and was familiar with all the proceedings in the trial, and his conclusion that it was excessive is to some extent strengthened by the fact that the second verdict was practically but one-third of the first.

In this respect the finding of misconduct of counsel for plaintiff may have some significance. It does not appear of what this misconduct consisted, and it was not made a ground in the motion for a new trial. For this reason it could not have been urged in this court as a ground for reversal if the motion for a new trial had been overruled, but the trial court was cognizant of what occurred before him, and in his discretion, on his own motion could have set aside the verdict if in his opinion the jury were biased thereby. In the absence of knowledge of the facts we would not attach a great deal of importance to this matter, but as this is plaintiff's appeal and the burden is upon it to tender a proper bill of exceptions it may be considered with the other findings of the court.

The first instruction reads:

"The court instructs the jury that if they shall find and believe from the evidence that at the time of the ac-

cident in question the crossing over the railroad of the defendant at or near South Manchester station in, question was a public crossing or in general use by the public at, and for a long time prior to the accident in question, then and in this event it was the duty of the defendant, the Chesapeake & Ohio Railway Company, and its co-defendants, George Crouse and Sam Landrum, as engineer and fireman in charge of the engine pulling the westbound train at the time of the accident in question, at a point or distance of at least fifty rods from said crossing, to give reasonable and timely signals when approaching said crossing by ringing the bell or blowing the whistle of the engine of which they were in charge continuously until the engine reached the crossing so as to warn persons approaching said crossing and using same, and if the jury shall believe from the evidence that the defendants, George Crouse and Sam Landrum, failed to perform this duty in operating said engine over this crossing and by reason thereof the plaintiff's decedent, Sarah A. Stone, while using said crossing, was struck by said engine, knocked down and killed, then and in this event the law is for the plaintiff and the jury will find for it against the defendants, and fix any damages you may award plaintiff under and as indicated under instruction No. 5, unless you should further believe from the evidence as in Nos. 2 and 3, any one or both of them, in which event you should find as indicated in said instruction or instructions, and unless you shall believe from the evidence as indicated in this instruction, you will find for the defendants.''

It is urged that this is erroneous as it makes the company liable for a failure to give the statutory signals, and precluded a consideration of the effect of the electric bell which was shown to be in operation. We do not think it open to this criticism. The statutory signals are mandatory and may be said to be the minimum of duty to be exercised by enginemen outside of incorporated cities and towns, and it was proper to submit same in the instructions. C., N. O. & T. P. Ry. Co. v. Champ's Admr., 104 S. W. 791. The company may adopt additional precautionary signals, indeed such are necessary in certain places, but when adopted they are supplemental and not substitutional, and will not relieve the company from giving the statutory signals, and a failure in this respect

will be negligence on its part, though if the traveler is warned by other signals such notice, if disregarded, may convict him of contributory negligence.

In dangerous crossing cases there is sometimes an issue as to whether the statutory signals are sufficient warning, and as to whether additional signals or precautions are necessary, or if adopted whether they are sufficient to warn travelers of the train's approach, but even then it would seem to be essential to set out the statutory duties in the instructions.

It is urged that a different rule was announced in the case of the C. & O. R. R. Co. v. Bland, 171 Ky. 430, in which the instruction read:

"It was the duty of defendants or their agents in charge of the engine at the time and place referred to in the evidence, to give reasonable notice or warning of the approach of said engine to the public highway crossing in evidence, and to exercise such care to avoid injuring the plaintiff while using said crossing as ordinarily prudent persons in the operation of an engine would exercise under circumstances similar to those proven in this case. . . . "

The statutory signals were not specifically set out.

The verdict was for the plaintiff, and on appeal to this court it was urged by the railroad company that the instruction was erroneous in that it precluded a consideration of the sufficiency of the warning given by the electric crossing bell. The court held that the instruction was not open to that criticism and did not condemn it. But it will be observed that the plaintiff in that case did not ask the jury to be instructed as to the statutory duties and did not complain of the form in which the instruction was given, and as it embraced the theory of defendant the latter was not prejudiced; but the question here involved was not raised nor considered, and therefore the decision is not in conflict with the conclusion here reached.

However, the instruction in this case was technically incorrect as it made it the duty of the enginemen to ring the bell or blow the whistle continuously, whereas the statutory provision is that the bell be rung or whistle sounded continuously or alternately. We cannot say that this alone was sufficiently prejudicial to authorize a new trial, but in view of the other conclusions of the chancel-

lor, and considering all together, we cannot say that an order sustaining the motion for the new trial was an abuse of discretion.

Judgment affirmed on original and cross appeals.