12287

CRAWFORD v. SIMONS-MAYRANT COMPANY

(139 S. E., 788)

1. MUNICIPAL CORPORATIONS—WHETHER DEATH OF CHILD WAS CAUSED BY NEGLIGENT OPERATION OF TRUCK OR CHILD'S UNEXPECTED DARTING IN FRONT OF TRUCK HELD FOR JURY.—Question whether death of small girl, struck by automobile truck, was due to defendant's negligent operation of such truck or to the child's unexpected darting in front of the truck *held,* under evidence, question for jury.

2. DEATH—NEGLIGENCE OF PARENTS MAY BAR RECOVERY FOR DEATH
   OF CHILD.—Negligence of parents, for whose benefit an action for
   death is brought, may bar recovery.

3. DEATH—WHETHER PARENTS' NEGLIGENCE WAS RESPONSIBLE FOR
   DEATH OF CHILD HELD QUESTION FOR JURY.—Whether death of small
   child was due to negligence of parents *held,* under evidence, question
   for jury.

Before BONHAM, J., Charleston, February, 1926.   Affirmed.

Action by Stephen W. Crawford, administrator of the
estate of Margaret Crawford, deceased, against the Simmons-Mayrant. Company.   Judgment for plaintiff, and defendant appeals.

The substance of the complaint is as follows:

III. That the said Margaret Crawford left surviving her
her father, Stephen W. Crawford, and her mother, Maggie
Crawford, and this action is brought for the benefit of her
said parents.

V. That, as this plaintiff is informed and believes, on or
about the 27th day of May, 1925, Margaret Crawford, an
infant under the age of 7 years, now deceased, was attempting to cross from the northern side of Radcliffe Street to
her home on the southern side of Radcliffe Street, when
suddenly, and without warning, a motor vehicle commonly
known as a Ford dump truck, owned by the defendant
herein, and being at the time operated by its agents and
servants, came at an unlawful and reckless rate of speed,
headed west on the said Radcliffe Street, which is a public
street of the city of Charleston, and did run into, upon and
against the person of the said Margaret Crawford with such
terrific force and violence as to knock her down, and did so
mangle and crush and injure her little body as to cause her

NOTE: As to contributory negligence of parent as bar to action by
parent or administrator for death of child, see annotation in 18 L. R.
A. (N. S.), 328; 38 L. R. A. (N. S.), 754; 20 R. C. L., 153; 4 R. C. L.
Supp., 1340.

On the view that negligence of parent, in action by parent, for
death of child, held to be question for the jury, see 20 R. C. L., 154.

to die within a few hours thereafter. That, although the driver of the said truck after having struck the little infant looked back at her lying in the street, he continued on his way and did not make any attempt to stop, or return, or in any wise assist her, or offer any service whatsoever to the stricken child.

VI. That, as this plaintiff is informed and believes, the injuries to and death of the said Margaret Crawford were due to and caused by the carelessness, recklessness, negligence, willfulness, and wantonness of the said defendant, its agents, and servants, in the following particulars, to wit:

(a) In deliberately racing an automobile dump truck through a public street in the city of Charleston at a time and place which it knew, or should have known, that numerous pedestrians of all ages and sizes were constantly crossing back and forth.

(b) In deliberately continuing with the said truck after having collided with the infant on the street without stopping, or attempting to stop, or attempt to assist the injured child, in violation of the laws of the State of South Carolina.

(c) In racing its said dump truck across the place where Jasper Street abuts and intersects Radcliffe Street at a speed far in excess of that permitted by the city ordinance of the city of Charleston.

(d) In operating said truck at a high and dangerous rate of speed and at a rate of speed in excess of that allowed by the ordinances of the city of Charleston, county and State aforesaid, and the laws of the State of South Carolina.

(e) In so operating the said truck on Radcliffe Street, a busy thoroughfare of the city of Charleston, at a greater speed than was reasonable and proper at the time and place so as to endanger the life of this infant on the said street and without regard to her safety while crossing the said street, in violation of the ordinances of the city of Charleston and laws of the State of South Carolina.

(f) In failing and omitting to blow any horn or give any signal of. warning whatsoever of the approach of said truck so as to warn the infant of its approach.

(g) In operating its said motor vehicle on the public streets of the city of Charleston without having the same equipped with sufficient and responsive brakes, as required by the ordinances of the said city and the laws of the State of South Carolina.

(h) In failing and omitting to keep a proper lookout on its said truck and to so operate the same as not to run into, upon, and against the person of the said infant.

(i) In failing and omitting to use reasonable care in the management of its said truck and in permitting a careless, reckless, and indifferent driver and operator to operate and have charge of its said truck.

VII. That, by reason of the negligence, carelessness, recklessness, willfulness, and wantonness of the said defendant, its agents and servants, the said Margaret Crawford lost her life, and her father and mother were deprived of the comfort, affection, and companionship of a cheerful and devoted daughter, and they suffered, still suffer, and always will suffer great grief and mental anguish, and in addition were put to great expense in arranging her funeral, all to their damage in the sum of $30,000.

The defendant's answer denies the allegations of the complaint, and then alleges as follows:

5. Answering article 5, defendant admits that the plaintiff's intestate, Margaret Crawford, ran suddenly into the street in front of a part of the defendant's truck before the same could be stopped, as a result whereof she died, and defendant denies the remaining allegations of said article.

9. And further answering said complaint, and for a further defense thereto, this defendant alleges that as this defendant's truck was proceeding at a legal and moderate rate of speed on Radcliffe Street, in the city of Charleston, the plaintiff's intestate, Margaret Crawford, jerked away

from her attendant, in whose charge she was, and ran across the street, close to and hidden from view by a car that was parked on said street, and so suddenly and without warning emerged from beyond the said parked car and jumped in front of a part of defendant's truck that it was humanly and physically impossible to have stopped the truck in time to have avoided coming into contact with the said Margaret Crawford.

10. And further answering said complaint, and for further defense thereto, this defendant alleges that the accident set out in the complaint occurred through and was caused by the negligence and recklessness of the parents of the deceased, who are the beneficiaries for whom the within action is brought, and their negligence so gross as to amount to willfulness, in that the said parents of the deceased permitted said deceased, an infant of tender years, to wit, of about 5 years of age, to go out upon a traveled street of the city of Charleston, where automobiles constantly pass and repass, accompanied only by her brother, an infant of about 11 years of age, and permitted the said deceased to jerk away from her infant companion, who was unable by reason of said infancy to restrain her, and run alone across the street in question close to and hidden from view by a car that was parked on said street, and to suddenly and without warning emerge from beyond the said parked car and jump in front of a part of the defendant's truck in such a manner that it was humanly and physically impossible to stop the said truck in time to have avoided coming in contact with the said deceased, Margaret Crawford, and that the negligence and recklessness of the said parties as aforesaid, combined with the alleged acts, if any, on the part of this defendant, contributed to the accident as a proximate and concurring cause thereof, without which the said accident would not have occurred.

Upon the call of the case for trial defendant moved for a continuance on the ground of the absence of a material

witness, John Brown, without whose testimony defendant could not safely go to trial, and thereupon plaintiff agreed if the said John Brown were present he would testify as set out in the affidavit of Lionel K. Legge, Esq., and the same should be admitted and the trial proceeded with.

*Messrs. Mitchell & Horlbeck* and *Buist & Buist,* for appellant, cite: *Contributory negligence of parent imputed to child when action brought for benefit of parent:* 115 S. C., 168; 128 S. E., 358. *Ordinance regulating speed of truck has no application unless there is causal connection between the act and the injury:* 128 S. C., 363.

*Messrs. Stoney & McGowan* and *J. D. E. Meyer,* for respondent, cite: *Presumption that error was not committed in lower court:* 120 S. C., 7.

October 14, 1927.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This was an action by Stephen Crawford, as administrator of the estate of his infant daughter, Margaret Crawford, deceased, against Simons-Mayrant Company, a corporation under the laws of the State of South Carolina, commenced by service of summons and complaint July 30, 1925, in the Court of Common Pleas for Charleston County. The action was for the benefit of the child's parents for alleged damages in the sum of $30,000, actual and punitive, for injuries resulting in the death of said infant daughter, alleged to have been caused by a dump truck of the defendant. The defendant interposed a general denial; while admitting the death of the child, denied that the same was due to the defendant's negligence or recklessness, and alleged that the same was caused by the child jerking away from

NOTE: The exceptions charge error in refusing nonsuit, directed verdict, and new trial, on the grounds that (a) no negligence of defendant; (b) negligence of infant; and (c) contributory negligence of parents in entrusting custody of child to an infant. Also that the reasons assigned by the Judge for refusal of nonsuit and directed verdict were based on misconceptions of the testimony.

her little brother, in whose charge she was, and, without looking, suddenly running in front of a parked car into the street in front of a part of defendant's truck before the same could be stopped, and as a result thereof she died. The defendant further set up contributory negligence on the part of the parents of the deceased.

The substance of the complaint, consisting of paragraphs 3, 5, 6, and 7, and paragraphs 5, 9, and 10 of the answer, together with appellant's exceptions, will be reported.

The case came on for trial before his Honor Judge M. L. Bonham, and a jury at February, 1926, term of Court of Common Pleas for Charleston County. At the close of plaintiff's testimony, defendant made a motion for a nonsuit, which motion was refused, whereupon the defendant offered testimony, and at the conclusion of all the testimony defendant moved for a direction of a verdict. This motion was also refused and the case duly submitted to the jury, resulting in a verdict for the plaintiff in the sum of $8,750 actual damages. A motion for a new trial, made on the part of the defendant, having been overruled, from the judgment duly entered on the verdict the defendant has appealed to this Court, imputing error to his Honor, the presiding Judge, in the particulars set forth under the several exceptions.

As stated by appellant's counsel, the exceptions are directed to the refusal of the presiding Judge to grant a nonsuit, to direct a verdict, and failure to order a new trial. The exceptions therefore will not be considered separately, but as a whole.

Counsel for appellant takes the position, in the first place, that there was no evidence of negligence on the part of the defendant, and that the only inference to be drawn from the testimony was that the sole cause of the death of the child was the act of the child in darting out suddenly from a parked car in front of a Ford truck. Under the view we take of the testimony, it is only necessary to make a brief

reference to the same in order to show that appellant's position is not well taken.

So much of the testimony as is pertinent to the questions before the Court is, in substance, as follows:

At the time of the death of Margaret Crawford, plaintiff's intestate, she was an infant 5 years of age, living with her parents on Radcliffe Street, in the city of Charleston. There was testimony by Dayton Crawford, 11 year old brother of Margaret, to the effect that on the day of her death, May 27, 1925, about 2 o'clock p. m., he accompanied his little sister from their home on the south side of Radcliffe Street to a store across the street for the purpose of purchasing some candy. The little boy had just returned home from school. On leaving the store, coming out the front door, they walked down along the sidewalk of the store until getting opposite the side entrance door of the store, intending to go across the street to their home. Dayton was holding the hand of his little sister, and looking, saw that a truck was coming and said to her that a truck was coming, intending "to wait until the machine went by and hold her by the hand and carry her across the street." At that time the little girl pulled loose from her brother and ran in front of a parked car, attempting to go across the street to her home, and, when she reached near the middle of the street, was struck by the truck of defendant, the front wheel striking her and the back wheel knocking her down. Dayton, the brother, rushed to his little sister, picked her up and carried her to her mother on the other side of the street to her home. She was unconscious. The truck was going real fast when approaching, did not slow up when crossing Jasper Street, did not stop after striking her, and did not slow up; the driver looked back but kept going, and the horn was not sounded. The point from where the little girl left the sidewalk and grass plat when she started across the street was about 16 feet beyond the front of the parked car. Shortly after the unfortunate oc-

currence, this witness, Dayton Crawford, pointed out to his father the several positions surrounding the spot where the little girl was struck by the truck.

The witness, Mrs. Horton, who lived in the lower flat of the same building in which the Crawfords live, testified, in substance, as follows: That she was standing in her yard in front of her home at the time of the occurrence, only about 30 feet from the spot where the child was stricken down by the truck; her attention was attracted by the screams of the children, and, as she looked, she saw the man who killed the little girl still going. When she first saw the man, he was directly opposite her. He was a negro. She then saw the little brother, Dayton Crawford, picking up his little sister. The negro driver of the truck did not stop, he drove right on, and when he got to Thomas Street, he looked back. As to the speed of the automobile, the witness said, "It was going at very rapid speed, about twice as fast as a machine should with children in the street," and stated later that she knew it was going at a rapid speed, and it did not stop or slow up at any time after she saw it.

Stephen W. Crawford, the father of the deceased little girl, in the course of his testimony stated that he was notified of the occurrence about 2:35 of that day, and when he arrived at the hospital, where she had been taken, he found her dead. Pursuant to his son, Dayton Crawford, having pointed out to him the different locations surrounding the spot where the little girl was stricken down, the witness had taken the measurements of the places and had drawn a plat of the same. Radcliffe Street, where the child was stricken down, was 30 feet wide from curb to curb; the distance from the blood spot in the street where the truck knocked the little girl down was 12 feet from the north curb, and about 18 feet from the south curb, and about 16 feet from the parked automobile. The witness further testified as to the constant use of this street, stating that it

was very much used, that many people live on the street, that it was frequently used by children as well as by many vehicles. He also stated that the schools turned out the children at 1:30 or 2 o'clock. The truck used by the defendant, which struck the child, was described as a Ford dump truck, and the witness stated that defendant had been constantly using this kind of truck over Radcliffe Street for the purpose of transporting hot asphalt material for paving a street beyond Radcliffe. The witness further testified as to distance as follows:

"Q. From the point where you found the blood to the corner of Jasper Street, what was the distance? A. Forty feet.

"Q. And the distance from a line of the automobile where you found the clot of blood was how many feet? A. Sixteen feet.

"Q. Now, Mr. Crawford, I will ask you this question. An individual traveling on Radcliffe Street at the intersection of Jasper and Radcliffe, traveling at 6 miles an hour, would have how many feet to stop before he got to where the child was, from this side 30 and 40 would not he have 70 feet? A. Yes, sir."

The store mentioned by the several witnesses is on the corner of Jasper and Radcliffe Streets.

The following ordinance of the city of Charleston was introduced by the plaintiff:

"Sec. 18. *Speed at Intersections.*—Upon approaching a crossing or intersecting streets, or a bridge, or sharp curve, or a steep descent, and also in traversing such crossings, bridge, curve, or descent, a person operating a motor vehicle shall have it under control and operate it at a rate of speed no greater than 10 miles an hour, and in no event, greater than is reasonable and proper, having regard to the traffic condition on such highway and the safety of the public."

The defendant offered in evidence the substance of a statement made by one John Brown (a negro) to an attorney who represented Brown in a criminal proceeding brought against him, which statement was as follows:

"I am 22 years of age, and experienced in driving. On the day of the accident, I left the asphalt plant of Simons-Mayrant Company, at the foot of Chapel Street, about 2 p. m., driving a Ford dump truck loaded with hot asphalt, to carry it across town to Ashley Avenue, where the paving work was going on. I drove west on Radcliffe Street from King to Smith, turned south into Smith, and thence to Ashley Avenue.

"I dumped my load where they were working on Ashley Avenue, and then drove back to the asphalt plant at the foot of Chapel Street, over the same route that I had come. The first I knew of any accident was when I was on my way back to Ashley Avenue again with another load.

"On the trip on which it is claimed the little girl was struck, I remember distinctly that I had to come practically to a stop at the corner of Radcliffe and Coming streets to let a machine pass on Coming Street, and that I was not going more than 12 miles per hour, certainly less than 15, from Coming to Smith Street, on Radcliffe. I did not see any little child run to cross the street, and I did not feel anything strike my truck. If the child had run out near the forward part of the truck, I could not have failed to see it. I knew absolutely nothing of the accident until after I had completed that trip, made a return trip, and was on my way back again.

"I did not look back after passing Jasper Street. As I was making the turn into Smith Street, I may have glanced to my left to see if the way was clear for me to make the turn, as I usually do, but if I did, I certainly saw nothing indicating that an accident had occurred.

"I remember on the trip in question that I met Smart Singleton and his team just a few feet east of Smith Street

23—S. C. 141

on Radcliffe, for he was making a wide turn from Smith into Radcliffe, and was almost to the north curb of Radcliffe Street, so that I had to pass to the south of him."

The only other testimony offered by the defendant, so far as the record discloses, was that of the witness John McCrady, civil engineer, and a plat introduced in evidence made by the witness.

Should his Honor, the presiding Judge, have held as a matter of law that the only reasonable inference to be drawn from the testimony was that the cause of the death of the little girl was her act, as contended by appellant? We think not.

There was testimony tending to show that the driver of the truck in question was running at a rapid rate of speed when the truck struck the child, and also when he crossed Jasper Street at the intersection of Radcliffe Street a point only about 40 feet distant from the spot on Radcliffe Street where the child was struck and killed by the truck. The ordinance of the city of Charleston requires that in approaching a crossing or intersecting streets and in traversing such crossings the rate of speed of a motor vehicle shall not exceed the rate of ten miles an hour. From the testimony, we think it could reasonably be inferred that the driver of the truck violated this ordinance in approaching and in traversing the crossing and intersection of Jasper and Radcliffe streets, a point only about 40 feet from the spot on Radcliffe where the truck struck and killed the little girl. This was a circumstance to be considered by the jury in trying to arrive at the cause of the death of the deceased. There was abundant testimony to show that, at the time the truck in question struck the child, the truck was being operated at a rapid rate of speed. It is true, no witnesses undertook to fix the exact rate of speed the truck was running, but this was not necessary. In fact, a person cannot be expected to fix the exact rate of speed a truck or other vehicle is traveling without the aid of

an instrument for that purpose. The language used by the witnesses in describing the speed of the truck "going real fast," "making a rapid speed," no doubt was understood by the Court and jury. Had the witnesses stated that the truck was running at the rate of, say, 20, 30, or 40 miles an hour, perhaps the language would not have been any more expressive, for, at best, it would have been only an estimate, though a matter for the consideration of the jury. Striking the little girl with the front wheel of the truck, knocking her down, and running over her with the rear wheel, and not stopping or slowing up, and having given no signals on approaching, as was testified by witnesses for the plaintiff, make a question for the jury. Granting that there is no statute of the State nor ordinance of the city of Charleston requiring the driver of an automobile or truck to stop after striking a person in the streets of Charleston, such conduct, nevertheless, may be, as in this case, a circumstance to be considered by the jury, along with other testimony as to what took place at the time of the occurrence. Again, there was testimony to the effect that when the child left the sidewalk to go across the street, she was 16 feet beyond the front of the parked car. From this, it could be reasonably inferred that the driver of the truck had an opportunity to see the child for quite a distance before getting opposite the place in question. Whether the driver of the truck saw the child, and whether he exercised that degree of care the law imposes and required to be exercised under the circumstances, were questions for the jury. Did the driver of the truck that struck and killed the little girl use ordinary care and prudence and use the care required by the city ordinance with respect to speed limit, and did he operate the truck with due care and at a rate of speed not greater than was reasonable and proper under the circumstances, and did he keep a proper lookout as was required under the circumstances? These were questions peculiarly within the province of the jury, to be submitted

to the jury under proper instructions from the Court, and, there being no exception on this line, we take it that it is conceded that the jury was fully and correctly instructed by his Honor, the presiding Judge.

The position of appellant, "that the sole and proximate cause of the injury was the little girl darting out into the street from in front of the parked car into the truck," cannot, in the opinion of the Court, be maintained.

Counsel for appellant takes the further position, "assuming there was negligence on the part of the driver," that the parents of the little girl, for whose benefit the action was brought, were negligent in placing her in the care and charge of her 11 year old brother, who, as counsel contends, was not capable of taking proper care of the little girl, and that without this proximate contributing cause the injury and subsequent death of the child would not have occurred, maintaining that "contributory negligence of the person, for whose benefit the action is brought, will defeat plaintiff's right to recover."

As was held by the Court in the cases cited by appellant (*Sandel v. State,* 115 S. C., 168; 104 S. E., 567; 13 A. L. R., 1268; *Cirsosky v. Smathers,* 128 S. C., 358; 122 S. E., 864), and, also, in the recent case of *Wilson v. Clarendon County,* 139 S. C., 333; 138 S. E., 33, negligence of the parents for whose benefit an action is brought may be set up as a bar to recovery, but, in order for such a plea to be of any avail, it must be established by proof, and ordinarily, as in this case, such question is one for the jury. There was testimony that the brother, Dayton Crawford, who acompanied his little sister, Margaret, across the street for the purpose of purchasing some candy at the corner store, was 11 years old, attending school in the sixth grade. The answers to the questions propounded to Dayton Crawford, when on the witness stand, indicate that he was of at least average intelligence. Furthermore, according to the testimony, he possessed sufficient physical

strength to take his little sister in his arms after she was knocked down in the street by the truck and take her to her mother across the street to their home. Certainly, the Court could not hold, as a matter of law, that the parents were negligent in permitting the child's brother, Dayton Crawford, to accompany her across the street, and could not hold that such an act was the proximate contributing cause of the injury, without which the injury would not have occurred. These were questions for the jury. We think that his Honor, the presiding Judge, properly overruled defendant's motion for a nonsuit, direction of a verdict, and new trial. The exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the Circuit Court be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.