## Louisville & Interurban Railway Company v. Pulliam's Administratrix.

### (Decided May 3, 1935.)

LEE & KRIEGER for appellant.

W. W. DOWNING, JOSEPH S. LAWTON and WILLIAM S. KAMMERER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is prosecuted by the Louisville & Interurban Railway Company from a judgment rendered by the Jefferson circuit court (common pleas branch, third division) for $3,000 in favor of Carolyn K. Potts, as administratrix of the estate of Miller C. Pulliam, her deceased son, upon this second trial of an action she has brought to recover damages for his death, caused, it was alleged, by the negligence of appellant's motorman in the operation of one of its cars.

This action, it appears, grows out of an accident which occurred at about 11 o'clock on the evening of January 7, 1933, near the intersection of the Shelbyville road and Meridian avenue, in St. Mathews, an unincorporated and populous business suburb of Louisville, Ky., where it is admitted the deceased, Miller Pulliam, lost his life by being struck and run over by one of the cars of the appellant railway company.

The parties to the action will be referred to hereinafter as plaintiff and defendant respectively.

Seeking compensation therefor, plaintiff sued for $50,000, alleging that by the gross negligence and carelessness of the defendant, one of its cars was caused to and did strike and run over the body of the plaintiff's intestate, Miller C. Pulliam, as the result of which he died.

At the conclusion of the evidence offered by the appellee, and at the conclusion of all the evidence, the defendant moved the court for a directed verdict, which in each instance was overruled.

The trial resulted in a verdict for $3,000 for the plaintiff. Motions and grounds for a new trial were filed by each of the parties, and the plaintiff also filed a motion to reinstate the verdict and judgment for $10,000 obtained upon the first trial, in substitution for this smaller verdict for $3,000 recovered upon the second, which motions were each and all overruled and judgment rendered for $3,000.

The defendant has prosecuted this appeal, asking a reversal of the judgment upon the following grounds: (1) The trial court's alleged error in overruling its motion for a directed verdict; and (2) alleged error in its instructions Nos. 1 and 2 given the jury. The plain-

tiff has also filed a cross-appeal, asking that the verdict and judgment recovered upon the first trial be reinstated and substituted for the judgment here recovered.

The proof offered upon both trials was substantially the same. The evidence for the plaintiff very clearly established certain basic facts as supporting the reasonable inferences drawn therefrom that the decedent, upon the occasion in evidence, had been struck while walking on or near this public crossing by an automobile at the time driven by a young man named Richard Oschner, causing him to fall or be knocked upon the defendant's track, where he laid in a helpless condition, unable to remove himself therefrom, when he was run over by one of the defendant's west-bound cars passing this intersection at about that time. The negligence relied upon by plaintiff for her cause of action is that the motorman in charge of this car must have, or by the exercise of any ordinary care both could and would have, seen and discovered Pulliam lying upon the track had he at the time observed his duty of lookout in approaching this public street crossing. On the other hand, the defendant contends that the proof was wholly insufficient to establish negligence against the motorman, as the evidence was entirely of such circumstantial and indefinite character as to require the jury to guess as to the exact cause of the accident and manner of its occurrence and as to who was responsible for it.

An analysis of the evidence heard upon both trials had of this action, clarified by photographs and map of the place of the accident and of the surrounding grounds and railway track put in evidence, tends very clearly to establish the following basic facts and to support certain reasonable inferences to be deduced therefrom:

Through St. Mathews, the scene of this accident, there runs in an eastwardly direction Frankfort avenue, sometimes referred to as the Louisville-Shelbyville road, which is a main thoroughfare. Along this highway, for a distance of three or four blocks, is situated the town's business section, near the eastern terminus of which the highway is intersected on its south side by Meridian street. The extensive use of the crossing makes it the congested center of the town's traffic.

Paralleling Frankfort avenue on the south side and

crossing this street intersection are the tracks of the defendant railway company. There are a number of small business houses on both the north and south sides of this avenue, extending from the west up to the Meridian street intersection. On its south side a sidewalk extends eastwardly in front of these places of business up to Meridian street, where its eastward course terminates and it turns and extends southwardly out the west side of Meridian street, requiring those using the walk for reaching points farther east along the avenue to cross over to the north side of the car track, or to the north sidewalk, which extends eastward beyond this Meridian street intersection. Also, in front of these business houses on the south side, there runs, within three feet, these street car tracks.

Lying between the street car track on the south and the metaled highway on the north there is an intervening neutral ground of some 21 feet, which is used both for parking cars and public travel.

On the night of the accident, and only a short time before it occurred, Miller Pulliam left the grocery where he worked, located in St. Mathews on the south side of Frankfort avenue some two blocks west of the Meridian street intersection, for his home. On the way he stopped in a restaurant for a lunch and left about 11 o'clock, remarking that he was tired and was going home to bed, and was last seen going east along the south sidewalk towards Meridian street in the direction and usual course followed in going to his home.

Two witnesses, Carl Lotze and Stanley Lockhart, who were then standing nearby on the north side of the street, saw him as he left the restaurant and walked eastward along the sidewalk south of the track until he passed into the shadows beyond on his way home, which was situated on this avenue a block or two beyond the Meridian street intersection. He was not seen again until some minutes later, when he was found lying in a dying condition upon the track of the defendant company near this street intersection, where it was manifest he had been struck and run over by one of the defendant's cars. His mangled body was found on the track some 45 or 50 feet west of the Meridian street intersection. He lived for some fifteen minutes after being found. A west-bound interurban car of the defendant had just shortly before crossed this street

intersection, which upon its arrival in Louisville was stopped and examined and found to bear indisputable evidence of having run over the body, flesh, blood, and bones being found on its bumper and wheels. This physical evidence "without doubt showed that this car, if not the sole cause of Pulliam's death, was an efficiently contributing cause to it. (So much seems practically certain. Beyond this there are only inferences from certain facts. These seem, however, reasonably clear.)"

The evidence shows that Pulliam's usual course for reaching his home from his place of work would have been to proceed along the south side of Frankfort avenue to Meridian street, where the walk on this south side of the track terminates, and then to cross the track and proceed along the southern margin of the highway north of the track, or to cross clear over to the farther sidewalk on the north side of the highway. Also, the physical evidence shows that while Pulliam's body was found 45 or 50 feet west of Meridian street, he was not struck at that point, for from that place eastward to within a few feet of the west line of Meridian street the roadbed was marked with blood, flesh, and bones, showing that the street car came in contact with his body first west of the Meridian crossing, where it is evident Pulliam had been struck by Oschner's automobile, while walking home on the north side of the track, and his body thrown upon it at a point where the pool of blood was found at the intersection, formed by the body's being there until struck and dragged westward by the street car.

The evidence is that at about the time Pulliam was due to arrive at the Meridian street intersection, an automobile driven by Richard Oschner was then going east on Frankfort avenue and turned south into Meridian street, where sufficient noise was made by the car's striking some object to attract the attention of Lotze and Lockhart, standing a block or more away, and who had just seen Pulliam walking in that direction. They attributed the noise heard to the scraping of the passing car against one of the two large posts standing near the intersection, or to the car's bouncing across the track.

Also, at the same time this automobile came down Frankfort avenue and turned into Meridian street, a

west-bound interurban car of the defendant was standing at a call box a square beyond this intersection, and within two or three minutes thereafter approached this crossing over a straightaway track, with its headlights burning and going about ten miles an hour. This car is clearly shown to have struck and run over the body of deceased, cutting off his legs and arm, and to have dragged it along the track for a distance of some 45 feet west of Meridian avenue.

Upon the conclusion of the evidence heard upon the first trial before Judge Daly, the defendant moved for a peremptory instruction, which was refused. No other instruction was offered or asked by the defendant. Thereupon, the instructions offered by the plaintiff were given by the court.

By instruction No. 1, the jury was told, in substance, that it was the duty of the defendant to exercise ordinary care to keep the car under reasonable control; to keep a lookout ahead; to blow his whistle or ring his bell continuously or alternately when approaching this Meridian street crossing; and to exercise ordinary care generally to avoid collision with or injury to persons on or near the track; that if they believed from the evidence that the defendant failed in any one or more of these duties, and that as a result thereof the plaintiff's decedent received injuries which contributed to his death, the law was for the plaintiff. The jury thereupon returned a verdict in the amount of $10,000 for the plaintiff.

Defendant moved to set aside the verdict and grant it a new trial, which motion was sustained by the court upon the grounds (1) that it erred in failing to give an instruction on contributory negligence of plaintiff's decedent, and (2) that, as there was admitted that there were two contributing causes of the death of plaintiff's decedent, the amount of the verdict ($10,000) was excessive against the defendant.

Upon the second trial of this cause, heard upon the same evidence before Judge Fields, who succeeded Judge Daly subsequent to his granting of a new trial, the cause was tried upon practically the same pleadings and proof, when the defendant, at the conclusion of the evidence, again moved for a peremptory instruction, which motion was overruled. Plantiff again offered

the same instructions which had been offered and given by the court upon the first trial, which were refused by the court. Thereupon, the court, discarding the instructions given by its predecessor, upon its own motion instructed the jury conformably with its interpretation of the evidence, as eliminating the question of Pulliam's contributory negligence in being on the track when injured, in that it found, as the only reasonable deduction from this evidence, that Pulliam had been struck and thrown upon the track in a dazed condition when hit by Oschner's automobile, for which reason no contributory fault could be attributed to him; also, by reason of such deduction made, that none of the signals and warnings, required under the first instruction to be given by the motorman of the car's approach, could or would have been of advantage or protection to him, and therefore there was no duty to give same under such circumstances and for which reason the imposition of such duty was omitted from the instructions given by it.

By instruction No. 1, given upon this theory of the case, the court placed upon defendant's motorman only the duty of exercising ordinary care, which included the duty of keeping a lookout for persons in an upright position crossing the track or near it, but did not require him to anticipate the presence of a body lying upon the track. Instruction No. 2 directed the jury that if they believed from the evidence the body of Pulliam was lying upon the track at the Meridian street crossing, and that the motorman of the approaching car, in exercising the duties required by the first instruction for the protection of people in an upright position crossing the tracks and in apparent danger from the movement of the car, could have seen the body of Pulliam on the track in time to have stopped his car or avoided striking it, and the car struck Pulliam and he was thereby killed, in such event they should find for the plaintiff. In short, "he thus left to the jury only the question of whether, if Pulliam's body was lying upon the track, the motorman, although not required to anticipate such a situation, could have discovered it had he been observing the duties required by the instruction" of exercising ordinary care and lookout.

The first verdict was unanimous and for $10,000;

the second was for only $3,000, and signed by nine of the jurors.

From this judgment the defendant has appealed, complaining of the alleged error in the instructions given and urging that it was entitled to a directed verdict, while the plaintiff by cross-appeal asks to have the verdict and judgment recovered upon the first trial reinstated and substituted for the smaller one recovered upon the second trial, contending that the court erred in setting aside the first judgment.

While we are of the opinion that the court did not err in granting the defendant a new trial, our conclusion is not based upon the grounds assigned by the trial court as justifying it. The instructions given upon the first trial, in requiring the motorman of the car to give signals of the approach of his car, must needs have contemplated that Pulliam was, if then upon the track, in such condition as to benefit and protect himself thereby. We do not conceive this deduction from the facts established by the evidence to be tenable, from which it follows that no instruction upon contributory negligence was called for under the circumstances shown, where the only reasonable inference deducible from this evidence is that the deceased was knocked upon the track in a dazed and helpless condition by Oschner's automobile, and which precluded alike the theory that any negligence on the part of the deceased contributed to his being thus on the track when struck, or of his then power to have saved himself from being run over by the approaching car even had timely warning and signals been given him by the motorman.

From this it results that the court did not err upon the first trial in failing to give a contributory negligence instruction, and therefore such failure to give it did not warrant its setting aside of the judgment recovered. Neither are we of the opinion that the verdict should have been set aside upon the grounds assigned, that it was excessive in awarding $10,000 for the death of a young man such as Pulliam was shown by the evidence to have been, nor did the awarding of such an amount become excessive by reason of it having been adjudged recovered against only one of the two tortfeasors, in that in such case the rule is that the plaintiff has the right to sue either of the contributors to his death and to recover full compensation from either therefor. We

are not unmindful of the general rule that upon the appellee's motion to substitute the verdict rendered in the first trial in lieu of that rendered upon the last one, as here made, the only alleged error occurring upon that trial of which the appellee can complain is the order granting a new trial, as all the other errors alleged committed against the appellee upon the trial are taken to have been cured by the verdict returned in his favor, although the defendant may present any errors against it. 2 R. C. L. sec. 161, page 188; 4 C. J. sec. 2562, pages 668 to 670; 46 C. J. sec. 244, page 283; Chesapeake & O. R. Co. v. Stone's Adm'r, 200 Ky. 502, 255 S. W. 134. Also, the rule is that in granting a new trial the lower court is not confined to errors specified, nor is this court confined, in reviewing the court's ruling made thereon, to the reasons given by it for granting (or refusing) a new trial, but is authorized to approve the granting of it if, for any reason appearing in the record, the new trial should have been granted. Chesapeake & O. R. Co. v. Stone, 200 Ky. 502, 255 S. W. 134.

As said in the case of Goff v. Hubbard, 217 Ky. 729, 290 S. W. 696, 698, 50 A. L. R. 1382:

"It is a rule that circuit courts have a wide discretion in passing upon motions for a new trial, and, unless abused, their actions in such matters will not be disturbed on appeal. Especially is this true where the motion is granted, as this court is somewhat more reluctant to reverse a judgment granting a new trial than it is in a judgment overruling such motion."

Therefore, being of the opinion that the court's granting of the new trial, complained of by appellee, was not erroneous, but proper, by reason of the error we find in its instruction No. 1 as given, it follows that appellee's motion presented upon cross-appeal to reinstate the verdict and judgment recovered thereunder cannot be sustained.

Next considering appellant's contention that it was entitled to a peremptory instruction upon this evidence, we are of the opinion that the evidence introduced by plaintiff, as hereinabove discussed, establishes clearly certain basic facts, from which the reasonable inference can be drawn that Pulliam was struck by the automobile

of Oschner and knocked upon the track of the defendant, where, it is both admitted and shown by conclusive physical evidence, he was killed by the car of the defendant, and refutes the appellant's contention that plaintiff's cause of action is based only upon "a series of inferences upon inferences." Holding this view of the evidence, we are led to conclude that the proof is amply sufficient to support the jury's verdict finding the defendant liable for the motorman's negligence in failing to exercise ordinary care and lookout as he approached this street intersection.

From the review of the evidence given above, it is apparent that it clearly establishes certain basic facts, from which reasonable deductions may be made as to how Pulliam came to be upon the track at the time he was run over and killed by defendant's motorman, upon his failure to discover Pulliam's presence there.

This evidence was upon each trial held by the judge presiding to be of sufficient probative value and substance to warrant its submission to the jury for determination of the question of the appellant's responsibility for Pulliam's death, due to the alleged negligence of its motorman. The evidence as to this is that defendant's motorman approached this crossing, near where he struck decedent's body, over a straight track when both bright moonlight and the headlight of his car so illuminated the track ahead as to make clearly visible any person either passing over it or lying thereon, by reason of which the motorman necessarily could and must have detected Pulliam's body on the track ahead had he been at the time observing and keeping the lookout duty imposed at this point upon him.

The court by its instructions given upon this trial left to the jury for its determination upon this evidence only the question of whether, if Pulliam's body was lying upon the track, the motorman, though not required to anticipate such a situation, could have discovered it, had he been observing his required duty. The jury's verdict answered this question in the affirmative. We are of the opinion that its finding was amply sustained by the evidence, and, further, that the complained of instructions of the court thus submitted the jury were, for the reasons hereinabove set out when discussing it, proper. The cases cited and relied on by appellant, as supporting this contention made for a peremptory in-

struction, we find are easily distinguishable in their facts from those here presented, and the opinions therein in nowise militate against or conflict with the concusions herein reached.

From this it follows that the judgment of the trial court is affirmed both upon the appeal and the cross-appeal.