# Burton v. Spurlock's Adm'r.

May 18, 1943.

R. Kent Sampson and D. B. Smith, and James W. Smith for appellant.

J. B. Carter, Astor Hogg, and J. B. Wall for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

On December 10, 1940, at about 4 o'clock p. m., Peggy Joyce Spurlock, an infant about six years of age, was struck and killed by an automobile at Cawood, an unincorporated town, on the highway between Harlan, Kentucky, and Pennington Gap, Virginia. The automobile was being operated as a taxi and was driven by Jack Pennington. It is claimed that it was owned by the appellant, Maud Jones Burton, but proof of its ownership was meager. Dewitt Spurlock, father of the deceased child, qualified as administrator of her estate, and brought suit to recover damages for her death.

Cawood has a population of 700 to 900, and extends along the highway a distance of one-half mile. Several houses front on the north side of the road. Across the road is a drain, or ditch, then the tracks of the Louisville & Nashville Railroad, and beyond the railroad a row of houses, fifteen or twenty in number. Over the ditch is a footbridge used by pedestrians going to and from these houses. Mrs. Spurlock, mother of the deceased, was distributing agent for a Knoxville newspaper and for about a month the deceased had been delivering papers for her mother to the subscribers. Her father knew of this arrangement and approved of it. The Spurlock home was on the north side of the highway almost opposite the footbridge. On the afternoon in question deceased had crossed the footbridge and railroad to deliver papers to subscribers on the south side of the railroad. It was on her return trip that she was killed. A bus traveling from Harlan to Pennington Gap

had stopped near the footbridge to let off or take on a passenger. The rear end of the bus was near the end of the footbridge and its left side was about two feet from the center of the highway, the surfaced part of which was about 18 feet in width. Another bus, described as a V. T. C. bus, was approaching from the opposite direction, traveling toward Harlan. It stopped about 100 feet from the scene of the accident and while it was stopped or just as it was starting the taxi driven by Pennington passed it. According to the great preponderance of the evidence, the deceased ran from behind the bus standing near the footbridge and ran immediately in front of the taxi when the front end of the taxi was about five feet from the rear of the bus, which was headed in the opposite direction. The child was struck by the left front fender of the taxi and lived only a few minutes. Pennington turned to the right and ran into a ditch and against a fence. He said that his taxi traveled about 15 feet after it struck the child, while witnesses for the appellee fixed the distance at 70 feet. Pennington testified that he did not see the child until she was about five feet in front of his taxi, and that he could not have seen her because she came from behind the parked bus. All of the witnesses except one estimated the speed of the taxi at 15 to 25 miles an hour. One of the witnesses who was a passenger on the V. T. C. bus estimated the speed at 40 to 45 miles an hour. Pauline Spurlock, the 18-year old sister of the deceased, was standing on the road behind the parked bus and about 150 feet from the place where the accident occurred. She testified that she saw her sister cross the footbridge, run behind the parked bus and into the path of the taxi. The witness saw the taxi approaching and knew it would strike her sister. She called to her sister, but the latter apparently failed to hear her. She testified that the deceased was "skipping, sort of running along," and that "she ran out from behind the bus right into this car." Traffic on the highway through the town of Cawood is heavy.

At the first trial on August 18, 1941, the jury returned a verdict for the defendant. The plaintiff filed his motion and grounds for a new trial and on September 17, 1941, the court sustained the motion, set aside the verdict and judgment, and granted the plaintiff a new trial. The defendant moved the court to include in its order the reasons and grounds for sustaining the

plaintiff's motion and granting the new trial, and the court overruled her motion. The defendant prayed an appeal to the Court of Appeals from the order setting aside the verdict and judgment and granting plaintiff a new trial, and she was given until a day in the succeeding term of court to file her bill of exceptions and transcript of the evidence and, within the time granted, she tendered her bill of exceptions together with a transcript of the evidence which was examined, approved, and signed by the presiding judge. The second trial was begun on November 26, 1941, but a mistrial resulted because a witness for the plaintiff brought out the fact that insurance was involved. The third trial resulted in a verdict for the plaintiff in the sum of $10,000, and from the judgment entered thereon this appeal is prosecuted. The record of the first trial has been made a part of this record.

Appellant insists that the trial court abused its discretion in setting aside the verdict of the jury on the first trial without any reason or without any error being shown by the record, and that the judgment on the last trial should be reversed and the trial court directed to reinstate the judgment rendered on the first trial. A number of other grounds are urged for reversal of the last judgment, but we need not consider them since we have concluded that the first ground must be sustained.

In his motion for a new trial, after the verdict and judgment in the first trial, the plaintiff relied upon six grounds: (1 and 2) Errors in admission and rejection of evidence; (3) error in giving instruction E offered by the defendant; (4) error in failing to define contributory negligence in the instructions; (5) the verdict was flagrantly against the weight of the evidence; and (6) the verdict was not sustained by the evidence. Appellee does not claim that there was any merit in grounds 1, 2, 5, and 6. No error in the admission or rejection of evidence on the first trial prejudicial to the plaintiff is pointed out, and a careful reading of the record discloses none. The verdict was not only not flagrantly against the evidence, but, on the contrary, was sustained by a great preponderance of the evidence. Instruction E told the jury that if they found from all the evidence that the parents of plaintiff's decedent negligently sent or permitted her to go upon the highway and across the highway and place herself in a position of danger upon and near the highway upon which defendant's car was

running and that but for such negligence of the parents, if any, the deceased would not have been injured, then the law was for the defendant and the jury should so find unless the jury further found from the evidence that the driver in charge of defendant's car either saw the decedent or, by the exercise of ordinary care, could have seen her, before she was struck, in time, by the exercise of ordinary care, to have avoided striking and injuring her. A similar instruction was given on the last trial, and it is not seriously contended that the instruction was improper. Under KRS 411.130 any recovery by the personal representative for the death of the child would be directly for the benefit of the parents, and, under such circumstances, negligence of the parents directly and proximately contributing to the death of a child non sui juris will preclude recovery on their part, and the question of the parents' negligence is usually one for the determination of the jury. Kentucky T. & T. Company v. Wilburn, 206 Ky. 510, 267 S. W. 1090; Cincinnati Times Star Company v. Clay's Adm'r 195 Ky. 465, 243 S. W. 16; Toner's Adm'r v. South Covington & C. Street Railroad Company, 109 Ky. 41, 58 S. W. 439; Dattola v. Burt Bros., 288 Pa. 134, 135 A. 736, 51 A. L. R. 205, annotation at page 209; Washington, Baltimore & Ind. Electric R. Company v. State, 153 Md. 119, 137 A. 484; McCann v. City of Detroit, 234 Mich. 268, 207 N. W. 923; Orris v. Tolerton & Warfield Company, 201 Iowa 1344, 207 N. W. 365; Dickey v. Haes, 195 Minn. 292, 262 N. W. 869; Crawford v. Simons-Mayrant Co., 141 S. C. 333, 139 S. E. 788. The instruction was authorized by the pleadings and the proof.

The plaintiff offered six instructions, and all of them were given over the objections of the defendant. Instruction No. 4 submitted the question of contributory negligence of the deceased, and told the jury to find for the defendant if they believed from the evidence that the deceased failed to exercise ordinary care, as defined in instruction No. 3, for her own safety and by reason thereof she ran or walked into the path of the defendant's car thereby contributing to bring about her injury and death to such an extent that but for such failure on her part she would not have been struck and killed, unless they further believed from the evidence that after the driver of defendant's automobile discovered her peril or, by the exercise of ordinary care, could have discovered it, he failed to use ordinary care and

the means at hand to avoid striking the deceased, in which event they should find for the plaintiff. Instruction No. 3 defined ordinary care as applied to the deceased as that degree of care usually exercised by ordinarily careful, prudent girls of her age, intelligence and experience under circumstances like or similar to those of this case. There was no merit in the plaintiff's claim that the court erred on the first trial in failing to define contributory negligence. The term was not used in the instructions, which were given in concrete form and set out facts constituting a definition of the term. Furthermore, the plaintiff offered no instruction on the subject.

On this appeal appellee apparently concedes that none of the grounds relied upon in his motion for a new trial was sufficient to authorize the court to sustain the motion, but on the authority of Louisville & I. Ry. Company v. Pulliam's Adm'x, 259 Ky. 82, 82 S. W. (2d) 191, and Chesapeake & O. Ry. Company v. Stone's Adm'r, 200 Ky. 502, 255 S. W. 134, he argues that the court was not confined to the specific grounds set forth in the motion for a new trial but was authorized to grant a new trial for any reason appearing in the record. As a reason, not relied upon by the plaintiff as a ground in his motion, which may have influenced the court in granting the new trial, appellee suggests it was prejudicially erroneous to give an instruction on contributory negligence of the child especially when an instruction on contributory negligence of the parents had been given. In appellee's brief it is said:

"It will be seen by looking at the instructions given by the court in the first trial that the court gave an instruction on contributory negligence of the parents of the decedent, and also an instruction on contributory negligence of the child herself. Obviously, and manifestly, the defendant was not entitled to two (2) different sets of contributory negligence instructions. We believe that the instruction on contributory negligence of the parents was the proper one, but the instruction given on contributory negligence of the child herself, who was only six (6) years old, was improper. This court has held that a child under seven (7) years of age, as a matter of law, cannot be guilty of contributory negligence, and therefore such an instruction is im-

proper. See Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S. W. 199. The rule seems to be well settled that a child under seven (7) years of age is not capable of being contributorily negligent. At any rate, and in all events, it is perfectly apparent to us that it was unfair to the plaintiff below for the court to give two (2) different sets of contributory negligence instructions. The court must have realized this and therefore was prompted to grant the new trial on that account, in part at least.''

Appellee is confronted by an insuperable difficulty. The instruction on contributory negligence of the child was offered by him and was given on his motion. Consequently, he could not take advantage of the error, if any, and the court was not authorized to sustain his motion for a new trial on the ground that instruction No. 4, which had been offered by him, was erroneous. One who participates in or invites an error may not complain. The maxim omnis consensus tollit errorem applies.

The trial court is vested with a sound discretion in disposing of a motion for a new trial, and unless that discretion has been abused this court will not disturb its ruling. Clark v. Bean, 267 Ky. 238, 101 S. W. (2d) 930; Louisville & I. Ry. Company v. Pulliam's Adm'x, 259 Ky. 82, 82 S. W. (2d) 191; Provident Life & Accident Insurance Company v. Watkins, 256 Ky. 645, 76 S. W. (2d) 889. However, the trial court is without authority to grant a new trial where the record fails to disclose a sound reason therefor. It may not grant it arbitrarily or capriciously. Grigsby v. Grigsby, 249 Ky. 727, 61 S. W. (2d) 605; City of Somerset v. Guffey, 248 Ky. 415, 58 S. W. (2d) 606; Whallen's Ex'rs v. Moore, 248 Ky. 348; 58 S. W. (2d) 601; Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313; Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274. In the present case the grounds assigned by the plaintiff in his motion for a new trial were without merit, and we do not find and appellee fails to point out any other ground in the record sufficient to warrant the court's action in sustaining the motion. The verdict not only was not flagrantly against the evidence, but was in accordance with the great weight of the evidence. The following from Gottsegen v. Wilson, 278 Ky. 734, 129 S. W. (2d) 575, 578, is pertinent here:

"The trial court has a wide discretion in passing on motions for a new trial and, ordinarily, its action will not be disturbed, but a careful consideration of the record in the present case fails to disclose any substantial reason for the court's action in setting aside the verdict on the first trial. It is not a case where conflicting conclusions could be reached. As we have seen, the grounds assigned for a new trial were untenable, and the only ground other than these upon which the court could have based its ruling was insufficiency of the evidence to sustain the verdict. The evidence, however, preponderated on the side of the plaintiffs in whose favor the verdict was returned."

Appellee insists, however, that appellant has failed to preserve her right to have the judgment entered on the last trial set aside and the first judgment substituted therefor. The argument is based on her failure to move the trial court, after the entry of the last judgment, to set it aside and to reinstate the verdict and judgment on the first trial and her failure to make any point of this in her motion and grounds for a new trial. The whole matter was before the trial court. Under the practice in this jurisdiction an appeal from an order setting aside a verdict and judgment and granting a new trial is held in abeyance until another trial is had and an appeal is taken from the last judgment. In order to preserve one's right of appeal from the order, an exception must be taken, an appeal prayed, and a bill of exceptions prepared and tendered within the proper time. Whallen's Ex'rs v. Moore, 248 Ky. 348, 58 S. W. (2d) 601; Clark v. Pullman Company, 205 Ky. 336, 265 S. W. 820. These steps were observed by appellant in the present case. The bill of exceptions prepared and tendered at the conclusion of the first trial were made a part of the bill of exceptions on the last trial. In such cases there are, in effect, two appeals, one from the judgment entered on the last trial and one from the order granting a new trial, although the latter is not a final order in the sense that it may be appealed from immediately or separately. All steps to perfect the latter appeal had been taken except filing the record in this court, which could not be done until a judgment had been entered in a new trial and an appeal taken from that judgment. It is the usual practice to move the court to set aside the last judgment and to reinstate the verdict and judgment on the first

trial, but it has never been held that this was necessary. In Richards v. Louisville & N. R. Company, Ky., 49 S. W. 419, and Nolan's Adm'r v. Standard Sanitary Manufacturing Company, Ky., 111 S. W. 290, it was held in each case that the lower court erred in sustaining a motion for a new trial, and the judgment was reversed with directions to set aside the last verdict and judgment and to reinstate the first verdict and judgment. An examination of the records in those cases discloses that no motion was made in either case at the conclusion of the last trial to set aside the judgment and to substitute therefor a judgment in conformity with the first verdict returned by the jury. In the present case the error of the trial court in granting a new trial appeared in the record and, as argued by appellee on another point heretofore discussed, the court was not confined on the last trial to the specific grounds set forth in the motion for a new trial but was authorized to set aside the last verdict and judgment for any reason appearing in the record. In Louisville & I. Ry. Company v. Pulliam's Adm'x, 259 Ky. 82, 82 S. W. (2d) 191, 195, it was said:

"The rule is that in granting a new trial the lower court is not confined to errors specified, nor is this court confined, in reviewing the court's ruling made thereon, to the reasons given by it for granting (or refusing) a new trial, but is authorized to approve the granting of it if, for any reason appearing in the record, the new trial should have been granted."

The judgment is reversed, with directions to reinstate the verdict returned by the jury on the first trial, and to enter a judgment in conformity therewith.